UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHRISTIAN ROBERT WALDEN,

               Petitioner,

v.

DONALD CURLEY,

               Respondent.

_____/

Case No. 2:22-cv-179

Honorable Paul L. Maloney

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Christian Robert Walden is incarcerated with the Michigan Department of Corrections at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan. On December 11, 2019, Petitioner pleaded *nolo contendere* in the Mason County Circuit Court to second-degree home invasion, in violation of Mich. Comp. Laws § 750.110a, two counts of assaulting/resisting/obstructing a police officer, in violation of Mich. Comp. Laws § 750.81d, and interfering with electronic communications, in violation of Mich. Comp. Laws § 750.540(5)(a).[1] On April 9, 2020, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 8 to 40 years for home invasion, 2 to 15 years for assaulting/resisting/obstructing an officer, and 1 year, 6 months to 5 years for interfering with electronic communications.

---

[1] Petitioner was also convicted of domestic violence, but he completed his sentence for that offense before he filed his petition; therefore, he is not "in custody" on that conviction and it is not at issue in the petition.

On September 14, 2022, Petitioner timely filed his habeas corpus petition raising five grounds for relief, as follows:

I.    The advice Mr. Walden received from his attorney before his plea was constitutionally ineffective and he should be allowed to withdraw his plea and be granted a new trial.

II.   Mr. Walden's sentence was improperly enhanced where he did not receive timely notice that he was being charged as a habitual offender.

III.  Mr. Walden's [plea] was not knowing and intelligent because the habitual offender enhancement is invalid.

IV.   O[ffense] V[ariable] 3 should have been scored at zero points where the victim's injuries were caused after the home invasion was complete.

V.    O[ffense] V[ariable] 10 should have been scored at zero where the trial court did not find there was a difference in the Defendant's size or strength that caused exploitation.

(Pet., ECF No. 1, PageID.3–12.) Respondent has filed an answer to the petition (ECF No. 9) stating that the grounds should be denied because they are meritless. For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## <u>Discussion</u>

## I.    **Factual Background**

Petitioner had been dating Heaven Duell for a couple of weeks when the two had an argument at Ms. Duell's apartment and ended the relationship. (4/17/19 Tr., ECF No. 10-2, PageID.165, 166, 168.) Petitioner left Ms. Duell's apartment with the understanding that he would not stay at Ms. Duell's apartment, and Ms. Duell closed and locked her door behind him. (*Id.*, PageID.168.) Petitioner did not have a key and was not on the apartment's lease. (*Id.*, PageID.165.)

After Ms. Duell had gone back to bed, she heard banging and found that Petitioner had broken through the front door, breaking the frame from the hinges, and had entered Ms. Duell's

apartment without her permission. (*Id.*, PageID.168–69, 173.) Ms. Duell called the police. (*Id.*) While Ms. Duell was attempting to speak with the 911 operator, Petitioner grabbed Ms. Duell around her throat, threw her onto the couch, and hit her in the abdomen. (*Id.*, PageID.174–176.) After striking Ms. Duell, Petitioner grabbed Ms. Duell by the arm and breast and threw her into a television stand, where Ms. Duell's head struck the top of the television stand, resulting in a concussion and lingering headaches and inflammation of her brain. (*Id.*, PageID.176–77.) Petitioner also took Ms. Duell's telephone, ended the call with emergency 911, and threw Ms. Duell's telephone across the street. (*Id.*, PageID.176, 178.)

Petitioner told Ms. Duell that she needed to call 911 and tell them not to come to the home or he would punch Ms. Duell in the mouth. (*Id.*, PageID.179.) When she explained that he had thrown her telephone across the street, Petitioner retrieved it and returned it to Ms. Duell. (*Id.*) Fortunately, after additional communications with emergency 911, officers of the Mason County Sheriff's Department arrived at the home. (*Id.*, PageID.179, 188–89.)

Petitioner was placed under arrest, handcuffed, and taken to the Mason County Jail. (*Id.*, PageID.191–92.) As corrections staff attempted to search Petitioner, Petitioner began to push against them. (*Id.*, PageID.203.) Petitioner tried to get his right leg around the leg of an officer, trying to kick the officer's leg. (*Id.*, PageID.193, 203.) When Petitioner got away from the wall and "kind of squatted down and turned toward" the officer, he was taken down to the floor. (*Id.*) Petitioner was instructed multiple times to "stop, quit resisting," but he continued to move on the ground while officers attempted to get him to settle down so that they could move him to a chair. (*Id.*, PageID.194, 204.) Eventually officers were able to get Petitioner into a chair, but Petitioner continued to actively struggle and resist, refusing to put his legs down and attempting to kick another deputy. (*Id.*, PageID.195–96, 205–06.) Petitioner then spit at two officers before the

officers were able to get Petitioner restrained. (*Id.*, PageID.195–96, 208.) Petitioner was charged with second-degree home invasion, in violation of Mich. Comp. Laws § 750.110a, two counts of assaulting/resisting/obstructing a police officer, in violation of Mich. Comp. Laws § 750.81d, interfering with electronic communications, in violation of Mich. Comp. Laws § 750.540(5)(a), and aggravated domestic violence, in violations of Mich. Comp. Laws § 750.81a. (Reg. of Actions, ECF No. 10-1, PageID.147.)

Petitioner appeared for preliminary examination on April 17, 2019. (4/17/19 Tr., ECF No. 10-2, PageID.158.) At the time, he informed the court that he did not believe that his attorney, Mr. Stevenson, had his best interests in mind because his attorney had not asked him about the case. (*Id.*, PageID.160–162.) The court advised Petitioner that the preliminary examination hearing would proceed, but if Petitioner was bound over for trial and, if he remained concerned, he should again bring the issue to the attention of the court. (*Id.*, PageID.162–63.) Following testimony presented at preliminary examination, the court found that probable cause existed to believe that Petitioner had committed the charged offenses. (*Id.*, PageID.211.)

On June 25, 2019, Petitioner appeared for a final conference before the Mason County Circuit Court. (6/25/19 Tr., ECF No. 10-4, PageID.222.) A plea offer was presented; however, Petitioner notified the court that he wished to proceed to trial. (*Id.*, PageID.225–26.)

Just days before the case was set to go to trial, Petitioner moved for a new attorney. The court held a hearing on Petitioner's motion on August 20, 2019. (8/20/19 Tr., ECF No. 10-5, PageID.228, 230.) Although the court did not find Petitioner's statements about his trial counsel

to be credible,[2] the court granted Petitioner's motion to appoint a new attorney and adjourned the trial. (*Id.*, PageID.235.)

Petitioner appeared for the first day of trial on December 11, 2019, represented by Mr. Swanson, Petitioner's second court-appointed attorney. (12/11/19 Voir Dire Tr., ECF No. 10-6, PageID.238.) Following voir dire, Petitioner notified the court that he intended to plead no contest to Counts 3 and 4, while proceeding to trial on counts 1, 2, and 5, because, at the time of the events, Petitioner had a blood alcohol level of .24. (12/11/19 Plea Tr., ECF No. 10-7, PageID.321–22.) Petitioner testified that he understood the potential penalties for each count, including as enhanced by Petitioner's status as a fourth habitual offender. (*Id.*, PageID.323–24.) He also testified that he understood the consequences of his pleas, that his pleas were unconditional, and that no promises had been made to him regarding sentencing, that no one had threatened or forced him to plead, that it was his own choice to plead no contest. (*Id.*, PageID.324–27.) Using the entire transcript of the preliminary examination as the basis for the plea, and considering Petitioner's testimony, the trial court found Petitioner's pleas of no contest to be voluntary, accurate, knowledgeable, and understanding. (*Id.*, PageID.332.) The court then reconvened jury selection; however, before a jury was seated, Petitioner notified the court that he intended to plead no contest to the remaining Counts 1, 2, and 5 based upon "both civil liability and intoxication, in this case, so lack of sufficient memory." (*Id.*, PageID.333–34.)

With respect to Counts 1, 2, and 5, Petitioner again testified that he understood the potential consequences of his pleas, including that the charge of second-degree home invasion with the fourth habitual offender sentencing enhancement carried a possible penalty of up to life in prison.

---

[2] The Court does not have the benefit of reviewing Petitioner's letter that was provided to the circuit court detailing his accusations about his first appointed attorney.

(*Id.*, PageID.336.) Petitioner also indicated that he had no questions about his constitutional rights and understood that, by pleading no contest, there would be no trial. (*Id.*, PageID.335–36.) He answered in the affirmative that no one threatened or forced him to plead, that it was his own choice to plead no contest, and that he was satisfied with the representation that he had from his defense attorney. (*Id.*, PageID.336.) Having the opportunity to review the transcript of the preliminary examination, the court accepted the transcript in its entirety as the basis for the plea and accepted Petitioner's pleas of no contest to Counts 1, 2, and 5 as voluntary, accurate, knowledgeable, and understanding. (*Id.*, PageID.340.)

Following Petitioner's plea but before sentencing, Petitioner's second court-appointed attorney, Mr. Swanson, moved to withdraw. (1/28/20 Tr., ECF No. 10-8, PageID.347.) The court granted that motion. (*Id.*, PageID.350.)

Represented by his third court-appointed attorney, Petitioner appeared before the Mason County Circuit Court for sentencing on March 3, 2020. (3/3/20 Tr., ECF No. 10-10, PageID.359.) At that time, Petitioner indicated that he voluntarily wanted to forego filing a motion to withdraw his plea (*id.*, PageID.396–97). The circuit court sentenced Petitioner to concurrent prison terms of 8 to 40 years for home invasion, 2 to 15 years for assaulting/resisting/obstructing an officer, and 1 year, 6 months to 5 years for interfering with electronic communications. (*Id.*, PageID.405–07.) The sentencing judge explained that Petitioner had six prior felonies and three prior misdemeanors and, taking into account the evidence presented at the preliminary examination, Petitioner's prior history, the offenses, and the statements of the victim, the recommendations from the parole department were fair and reasonable. (*Id.*, PageID.405.)

With the assistance of appointed counsel, Petitioner filed an application for leave to appeal; however, on February 5, 2021, his appellate counsel was granted leave of court to withdraw due to a breakdown in the attorney-client relationship. (2/5/21 Tr., ECF No. 10-12, PageID.415.)

After being appointed a fifth attorney, Petitioner filed a motion to withdraw his plea, alleging ineffective assistance of counsel, and to have Petitioner resentenced based upon faulty notice of Petitioner's fourth habitual offender status. (Mot. to Withdraw Plea, ECF No. 10-14, PageID.468.) Petitioner's motion was heard by the Mason County Circuit Court on May 13, 2021. (5/13/21 Tr., ECF No. 10-13, PageID.417, 419.) The circuit court denied the motion, finding that the advice that Petitioner claims to have been given as to residency was not ineffective assistance of counsel (*Id.*, PageID.431.) The circuit court observed that Petitioner "was not rushed into this plea." (*Id.*) Petitioner initially pleaded guilty to multiple charges right away before sitting through additional jury selection and a lunch break and then deciding to plead no contest to the crime of home invasion. (*Id.*) The court was able to observe Petitioner's demeanor and his answers to the court's questions and was assured that Petitioner understood what he was doing and had not been coerced. (*Id.*, PageID.431–32.) Moreover, the court explained that Petitioner had actual notice that he was being charged as a fourth habitual offender given the number of conversations on the issue between the parties "throughout the entirety of the case." (*Id.*, PageID.433.)

Petitioner filed a supplemental application for leave to appeal these decisions to the Michigan Court of Appeals on June 30, 2021. (App. for Leave, ECF No. 10-14, PageID.437, 438; 11/8/21 Mich. Ct. App. Ord., ECF No. 10-14, PageID.603.) And, on November 12, 2021, Petitioner filed a *pro per* supplemental brief. (12/3/21 Mich. Ct. App. Ord., ECF No. 10-14, PageID.435.) By order entered on December 3, 2021, the Michigan Court of Appeals denied Petitioner's first application for leave to appeal "for lack of merits in the grounds presented." (*Id.*)

The Michigan Supreme Court similarly denied Petitioner's application for leave to appeal on May 3, 2022, explaining, "we are not persuaded that the questions presented should be reviewed by his Court." (Mich. Sup. Ct. Ord., ECF No. 10-15, PageID.750.)

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to

an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Discussion

### A.    Ground I, II, and III: Validity of Petitioner's No-Contest Plea

The Court's analysis of Petitioner's request for habeas relief necessarily begins with Petitioner's no-contest plea. Under Michigan law, a no-contest plea "has the same consequences as a guilty plea." *People v. Tomlinson*, 50 Mich. App. 655, 657, 213 N.W.2d 803 (1973). And a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those

that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985);
*Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.

Petitioner does not challenge the state court's jurisdiction; however, in his habeas Grounds
I, II, and III, Petitioner asserts that his plea was invalid. The test for determining a guilty plea's
validity is "whether the plea represents a voluntary and intelligent choice among the alternative
courses of action open to the defendant." *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*,
400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the
relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and
several requirements must be met. The defendant pleading guilty must be competent, *see id.* at
756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426
U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered
"voluntarily," i.e., not be the product of "actual or threatened physical harm, or ... mental coercion
overbearing the will of the defendant" or of state-induced emotions so intense that the defendant
was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at
750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by
promises or threats which deprive it of the character of a voluntary act, is void."). The defendant
must also understand the consequences of his plea, including the nature of the constitutional
protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*,
368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a
plea of guilty shall not be accepted unless made voluntarily after proper advice and with full
understanding of the consequences.") (internal quotations and citation omitted). Finally, the
defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267–68; *Brady*,
397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). A plea not voluntarily

and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Here, Petitioner contends that his no-contest plea was invalid because he was denied effective assistance of counsel; but for counsel's advice and refusal to pursue Petitioner's alleged defenses, Petitioner claims that he would have proceeded to trial. Petitioner also contends that his plea was invalid because Petitioner did not have proper notice of the fourth habitual offender sentencing enhancement. The Court will address each argument in turn.

### 1.      Ground I: Ineffective Assistance of Counsel

Petitioner first contends that he was denied effective assistance of counsel because counsel did not thoroughly investigate the facts as to Petitioner's residency at the time of his crimes, instructed Petitioner that he had no defense to the charges against him, and instructed Petitioner that it did not matter that Petitioner had been living in the apartment that he was charged with breaking and entering. (Pet., ECF No. 1, PageID.4.) Petitioner contends that, but for counsel's ineffective representation, he would have proceeded to trial. (*Id.*, PageID.7.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic

decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d), analysis of counsel's performance. In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied

*Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

### a.    Investigation and Pursuit of Defenses

Petitioner claims that he informed defense counsel that the victim was fabricating her version of the events presented during the preliminary examination, but that counsel refused to pursue that defense. (Pet., ECF No. 1, PageID.3–5.) He also claims that counsel refused to pursue the defense that Petitioner was living in the residence that he was accused of breaking and entering. (*Id.*, PageID.7.) He asserts that "[a] competent attorney would have discovered from the complainant's preliminary examination testimony, that there were credible plausible legal defenses in the case." (*Id.*) These claims of ineffective assistance of counsel claim do not survive Petitioner's no-contest plea. As discussed above, claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.

The same principle applies to Petitioner's no-contest plea:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same

14

> effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted). Thus, "[l]ike a plea of

guilty, a plea of *nolo contendere* constitutes a waiver of all so-called 'non-jurisdictional defects'

or, more accurately, any claims not logically inconsistent with the issue of factual guilt[.]" *United*

*States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982).

To the extent that Petitioner takes issue with his trial counsel's failure to pursue what

Petitioner believes were available defenses, his arguments do not attack the voluntary or intelligent

nature of his plea, but instead relate to earlier alleged constitutional deprivations. The claims have

therefore been waived by his subsequent guilty plea. *See Stiger*, 20 F.App'x at 308–09; *see also*

*United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel

claims are waived).

### b.  Trial Counsel's Legal Advice

Conversely, Petitioner's argument that trial counsel provided incorrect legal advice as to

the nature of the charge of breaking and entering under Michigan law as it related to Petitioner's

residency is cognizable on habeas review because having notice of the nature of the charge is

essential to ensure a voluntary and intelligent plea. *See Tollett*, 411 U.S. at 266–67. However,

while not waived, Petitioner's argument is meritless.

In his affidavit submitted in support of his motion to withdraw his no-contest plea,

Petitioner claims that he informed his attorney that he was a "legal resident" of the home that he

had been accused of breaking and entering. (ECF No. 10-14, PageID.474.) He claims that his

attorney told him that, even if he was a "legal resident," he could be accused of breaking and

entering. (*Id.*) He also asserts that his attorney told him that he was guilty of the crime and that,

"in lieu of jeopardizing [himself] at trial and going to prison for the rest of [his] life," Petitioner

should accept the plea deal being offered. (*Id.*, PageID.475–76.) On direct appeal, Petitioner argued that this exchange demonstrated ineffective assistance of counsel. (Pet. App. Br., ECF No. 10-14, PageID.459.) The Michigan Court of Appeals disagreed, concluding that Petitioner's claim lacked merit. (12/3/21 Mich. Ct. App. Order, ECF No. 10-14, PageID.435). This Court cannot say that determination was unreasonable.

Implicit in Petitioner's argument is the idea that "legal residence" is somehow significant to the crime of home invasion. The Court finds no support for that assumption under Michigan law.

Michigan law defines legal residence often as synonymous with domicile, both connoting the "intent of choosing that place as a permanent residence." *Kubiak v. Steen*, 215 N.W.2d 195, 198 (Mich. Ct. App. 1974). However, the crime of home invasion does not ask whether the accused had identified the home as his "legal residence" or otherwise had a subjective intent to remain in the home, including as Petitioner contends, whether Petitioner had brought his belongings to the victim's apartment or had, at one time, the permission to come and go. (Pet., ECF No. 1, PageID.4.)

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the second degree.

Mich. Comp. Laws Ann. § 750.110a(2). "'Without permission' means without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." *Id.*

At the preliminary examination, which Petitioner accepted as true for purposes of his no-contest plea, *see New*, 398 N.W.2d at 363, evidence revealed that Ms. Duell had previously given Petitioner permission to be at the dwelling but that he was not a lessee of the dwelling and did not

16

possess a key, (4/17/19 Tr., ECF No. 10-2, PageID.165). At the conclusion of the March 9, 2019, argument, Petitioner and Ms. Duell agreed that, even if Petitioner "had to sleep on the streets," he was not staying at Ms. Duell's apartment. (*Id.*, PageID.168.) Petitioner left and, significantly, Ms. Duell closed and locked the apartment door behind him. (*Id.*) She testified that she had not given Petitioner permission to reenter when Petitioner subsequently broke through the apartment's front door. (*Id.*, PageID.168–69.) Thus, regardless of whether Petitioner intended to give up his previous residence or whether he personally intended to return to Ms. Duell's home, the state court reasonably concluded that he did not have Ms. Duell's permission to reenter the residence when he "punched through the door," breaking the door and a portion of the door frame. (*Id.*, PageID.169.) It was not unreasonable for the trial court to conclude that the evidence supported the charge of second-degree home invasion.

Even if the evidence could show that Petitioner had some right to be in the house *at one time*, "it is possible to 'break and enter' one's own home if one has lost the legal right to be present in that home. . ." *People v. Dunigan*, 831 N.W.2d 243, 247 (Mich. Ct. App. 2013) (citing *People v. Szpara,* 492 N.W.2d 804 (Mich. Ct. App. 1992)). In agreeing that Petitioner would leave the residence, and then closing and locking the door behind him, Ms. Duell clearly revoked any prior implied permission that Petitioner had to be in her home at the time that he reentered. *See People v. Fischer*, 2020 WL 7413598, at *3 (Mich. Ct. App. Dec. 17, 2020) (concluding that the evidence supported a charge of home invasion where "there [was] overwhelming evidence that the second entry was without permission. Again, the entry was preceded by Miner telling Fischer to leave— thereby revoking any implied permission he had to be in her home—and by Fischer physically assaulting Miner. . . Given that evidence no reasonable jury would conclude that the second entry was with permission."); *Dunigan*, 831 N.W.2d at 247 (holding that the record "overwhelmingly"

showed that the defendant had no right to be in the house at the time of the invasion where the dwelling belonged to the defendant's girlfriend, and she had not given him a key to the home). Thus, Petitioner has not shown that the advice that he claims to have been given by defense counsel was legally inaccurate, let alone that counsel's performance fell below an objective standard of reasonableness. *Hill*, 474 U.S. at 58.

The evidence against Petitioner was overwhelming, particularly where Petitioner had a blood alcohol level of .24 at the time of his crimes and a "lack of sufficient memory." (12/11/19 Plea Tr., ECF No. 10-7, PageID.322.) At various stages of the proceedings, including at the time of his plea, Petitioner was informed and understood that he was being charged as a fourth habitual offender and that, because of the sentencing enhancement, could face a penalty of up to life in prison for the crime of home invasion in the second degree. (*Id.*, PageID.335.) Trial counsel's opinion that Petitioner would be found guilty of home invasion and that he faced the possibility of life imprisonment "is not coercive," but critically important legal advice. *Williams v. United States*, 47 F. App'x 363, 370 (6th Cir. 2002); *see also United States v. Green*, 388 F.3d 918, 923 (6th Cir. 2004) ("[A]ccurate information regarding the possible ramifications of proceeding to trial cannot be construed as coercive"). Petitioner simply has not demonstrated that defense counsel's performance with regard to Petitioner's possible life sentence was professionally unreasonable. To the contrary, the record indicates that Petitioner's counsel provided valid advice about the nature of the charge such that Petitioner's guilty plea was knowing, intelligent, and voluntary. Therefore, Petitioner is not entitled to habeas relief.

### 2. Grounds II and III: Notice and Validity of Habitual Offender Enhancement

In his second ground for habeas relief, Petitioner contends that was denied due process of law because he did not have timely notice under Michigan law that he would be charged as a fourth

habitual offender. (Pet., ECF No. 1, PageID.8.) He claims that "[e]ven if the prosecution informs the defendant and his counsel of an intent to file a habitual offender notice, this is not enough to comply with the [Michigan] statute [governing notice of enhancement]." (*Id.*) Petitioner also claims in his third ground for habeas relief that, because of the prosecution's failure to serve Petitioner notice of the sentencing enhancement in a timely manner under Michigan law, the sentencing enhancement was invalid, also rendering his plea unknowing and unintelligent. (*Id.*, PageID.10.) His claims are meritless.

First, the extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). Petitioner's attack on the information regarding the habitual offender sentencing enhancement does not raise a federal constitutional issue. Certainly, due process mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). For that reason, the offense must be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. State of Tenn.*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id*. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a

defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

The state court record, however, reveals that Petitioner had more than adequate notice regarding the habitual offender enhancement to prepare a defense. His attack is not focused on a lack of notice, it is focused on the prosecutor's purported failure to comply with the state statutory requirements regarding the timing of the notice.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Petitioner's invitation to assess whether the prosecution complied with state law "is not part of a federal court's habeas review of a state conviction." *Id*. at 67. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id*. at 67–68.

Moreover, the state court resolved the state law question regarding the habitual offender notice in the prosecutor's favor. Petitioner raised the same challenge on his direct appeal. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." Order, *People v. Walden*, No. 357673 (Mich. Ct. App. Dec. 3, 2021) (ECF No. 10-14, PageID.435). The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Thus, the premise of Petitioner's argument, that he did not receive appropriate notice under the Michigan statute, a state-law issue, is conclusively resolved.

Additionally, whatever notice was imparted by the information, it is clear that Petitioner's plea was founded on a complete understanding of the sentencing consequences he faced. It is well-settled that a plea cannot be voluntarily and intelligently made where a defendant does not receive "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). Thus, to find a constitutionally valid plea, the defendant must understand the direct consequences of his plea. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153–54 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991).

A defendant's statements on the record during a plea colloquy that he understands the nature and the consequences of the plea provide strong evidence that a plea was intelligent and knowing. "When a defendant ... brings a federal habeas petition challenging his [or her] plea, the state generally satisfies its burden [to show that a plea was intelligent] by producing a transcript of the state court proceeding." *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir. 1993).

Here, the state has produced a transcript of the plea colloquy that demonstrates that Petitioner was fully informed of the sentencing enhancement and its potential consequences at the time that he entered his plea. And, indeed, Petitioner does not contend otherwise. The record reveals that Petitioner had actual notice of the sentencing enhancement in the form of a supplemental information, filed on Apil 29, 2019. (5/13/21 Tr., ECF No. 10-13, PageID.432;

Suppl. Information, ECF No. 10-14, PageID.465–66; see also ECF 10-14, PageID.491.) The sentencing enhancement was discussed on the record in Petitioner's presence at the June 2, 2019, final conference, (6/25/19 Tr., ECF No. 10-4, PageID.224–25), and it was discussed during the plea colloquy (12/11/19 Plea Tr., ECF No. 10-7, PageID.324, 337–37). Prior to entering his no-contest plea, the trial court confirmed that Petitioner understood the potential penalties for each count, including as enhanced by Petitioner's status as a fourth habitual offender. (*Id.*, PageID.323–24, 335–36.) There was nothing unknowing or unintelligent about Petitioner's decision to plead no contest in the face of the fourth habitual offender sentencing enhancement. Therefore, Petitioner's claim does not implicate his due process rights. He is, again, not entitled to habeas relief.

**B.      Ground IV and V: Challenges to Sentencing**

Lastly, Petitioner challenges his sentence, claiming that the trial court improperly scored Offense Variables 3 and 10. (Pet., ECF No. 1, PageID.11–13.) Claims concerning the improper application of, or departures from, sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings, *see Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (discussing that federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (holding that the alleged violation of state law with respect to sentencing is not subject to federal habeas relief). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *Townsend v. Burke*, 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447.

In his arguments regarding each challenged offense variable, Petitioner reviews the facts before the trial court and then argues that the court erred when applying the guidelines to those facts. Specifically, Offense Variable 3 considers "physical injury to the victim." Mich. Comp. Laws § 777.33(1). Petitioner claims that, because he was charged with breaking and entering the victim's home with the intent to assault the victim, not the intent to assault and batter the victim, the crime was complete before the victim suffered any injury and the court should not have considered the victims injuries from the subsequent battery. (*Id.*, PageID.11.)

Likewise, Offense Variable 10 concerns "exploitation of a vulnerable victim." Mich. Comp. Laws § 777.40(1). Subsection (c) upon which the circuit court relied, asks whether the offender "exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious." *Id.* Petitioner claims that Offense Variable 10 was improperly scored because the victim weighed 240 pounds while Petitioner weighed only 158 pounds and the court was not presented with any facts that would have indicated a difference in strength. (*Id.*, PageID.12.)

The crux of Petitioner's challenge, therefore, is not that the sentencing court relied on materially false facts, but that the court reached the wrong scoring conclusions based on the facts. Thus, as presented, Petitioner's challenge does not raise a federal constitutional claim, it raises a state law claims that is not cognizable on habeas review. Moreover, this Court is bound by the Michigan Court of Appeals' determination that Petitioner's challenge, as a matter of state law, "lack[s] . . . merit." Order, *Walden*, No. 357673 (Mich. Ct. App. Dec.3, 2021) (ECF No. 10-14, PageID.435.)

Petitioner makes one more attempt to squeeze a claim of scoring error into the narrow confines of habeas cognizability by making a passing reference to "impermissible judicial fact

finding" as the basis of his sentence. Petitioner's argument is founded upon a line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Subsequently, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id*. at 520–21 (relying on *Booker*, 543 U.S. at 264–265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever

only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018). The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson*, 901 F.3d at 714. The court reasoned that, "[]a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences. *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

But Petitioner was sentenced well after the *Alleyne* and *Lockridge* decisions. At the time Petitioner was sentenced the guidelines were advisory, not mandatory. Purely advisory applications of the guidelines do not run afoul of the Sixth Amendment. *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi,* 530 U.S. at 481–82 (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'") (emphasis added) (quoting *Tucker*, 404 U.S. at 447); *see also Reign v. Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts.") Petitioner's contention that his sentence was based on judge-found facts, therefore, does not raise a federal constitutional claim.

For all of these reasons, Petitioner has failed to show that the state court's rejection of his sentencing claims are contrary to, or an unreasonable application of, clearly established federal law; thus he is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that ... jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Nonetheless, although the Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any

issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## <u>CONCLUSION</u>

The Court will enter an order and judgment denying the petition because Petitioner has failed to raise a meritorious federal claim and denying a certificate of appealability.

Dated:   <u>December 11, 2023</u>                /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge